1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN DUNN,

11              Petitioner,                    No. 2: 11-cv-2731 JAM GGH P

12         vs.

13   GARY SWARTHOUT, et al.,

14              Respondents.               FINDINGS & RECOMMENDATIONS

15   _____/

16   INTRODUCTION

17             Petitioner, a state prisoner proceeding pro se, has filed an application for writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is petitioner's motion for

19   preliminary injunction, filed January 2, 2013.  After reviewing the papers filed in support of and

20   in opposition to the motion, the court now issues the following findings and recommendations.

21   BACKGROUND

22             Petitioner challenges a prison disciplinary guilty finding for fighting that resulted

23   in 61 days of credit loss, which petitioner also claims could lead to a seven-to-fifteen-year denial

24   by the Board of Parole Hearings (BPH).  (Petition, at doc. no. 1, p. 1.)  Petitioner alleges various

25   due process violations regarding the disciplinary hearing and finding.  (Id.)  Petitioner states that

26   he faces a possible multiple-year denial of up to fifteen years at his next parole hearing, which

                                                  1

1   has been previously scheduled various times and which petitioner waived in the past, but is next

2   scheduled for April 3, 2013.  For this reason, petitioner's motion for injunctive relief seeks an

3   order prohibiting prison officials from considering the Rule Violation Report ("RVR") at issue

4   because it will affect the outcome of the upcoming hearing.

5   DISCUSSION

6       I.  Standards for Preliminary Injunction

7           "The proper legal standard for preliminary injunctive relief requires a party to

8   demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm

9   in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

10   injunction is in the public interest.'"  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir.

11   2009), quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 374

12   (2008).

13           A Ninth Circuit panel has found that post-Winter, this circuit's sliding scale

14   approach or "serious questions" test survives "when applied as part of the four-element *Winter*

15   test."  Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-1132 (9th Cir. 2011).  "In other

16   words, 'serious questions going to the merits,' and a hardship balance that tips sharply toward the

17   plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter*

18   test are also met."  Id., at 1132.

19           Preliminary injunctive relief is permissible in habeas cases.  See Byrd v. Moore,

20   252 F.Supp.2d 293, 297-98 (W.D.N.C. 2003) (discussing standards for preliminary injunctive

21   relief in habeas cases). "Likelihood of success on the merits alone, however, without any

22   showing of a risk of irreparable harm, is not sufficient to warrant the issuance of a preliminary

23   injunction since Petitioners must always show some risk of probable irreparable injury."  Id. at

24   298, citing Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 196 (4th Cir. 1977).

25   \\\\\

26   \\\\\

II.  AEDPA Standards

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S.Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an

1   *unreasonable* application of federal law is different from an *incorrect* application of federal

2   law.'" Harrington, supra, 131 S.Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120

3   S.Ct. 1495 (2000).  "A state court's determination that a claim lacks merit precludes federal

4   habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

5   decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004).

6   Accordingly, "a habeas court must determine what arguments or theories supported or . . could

7   have supported[] the state court's decision; and then it must ask whether it is possible fairminded

8   jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

9   decision of this Court." Id.  "Evaluating whether a rule application was unreasonable requires

10  considering the rule's specificity.  The more general the rule, the more leeway courts have in

11  reaching outcomes in case-by-case determinations.'" Id.  Emphasizing the stringency of this

12  standard, which "stops short of imposing a complete bar of federal court relitigation of claims

13  already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a

14  strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.,

15  citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

16          The undersigned also finds that the same deference is paid to the factual

17  determinations of state courts.  Under § 2254(d)(2), factual findings of the state courts are

18  presumed to be correct subject only to a review of the record which demonstrates that the factual

19  finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in

20  light of the evidence presented in the state court proceeding."  It makes no sense to interpret

21  "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in

22  § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the

23  same record could not abide by the state court factual determination.  A petitioner must show

24  clearly and convincingly that the factual determination is unreasonable.  See Rice v. Collins, 546

25  U.S. 333, 338, 126 S.Ct. 969, 974 (2006).

26  \\\\\

1    The habeas corpus petitioner bears the burden of demonstrating the objectively

2  unreasonable nature of the state court decision in light of controlling Supreme Court authority.

3  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must

4  show that the state court's ruling on the claim being presented in federal court was so lacking in

5  justification that there was an error well understood and comprehended in existing law beyond

6  any possibility for fairminded disagreement."  Harrington, supra, 131 S.Ct. at 786-787.  "Clearly

7  established" law is law that has been "squarely addressed" by the United States Supreme Court.

8  Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).  Thus, extrapolations of

9  settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.

10  Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state

11  sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

12  prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

13  established law when spectators' conduct is the alleged cause of bias injection).  The established

14  Supreme Court authority reviewed must be a pronouncement on constitutional principles, or

15  other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

16  federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

17    The state courts need not have cited to federal authority, or even have indicated

18  awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8, 123 S.Ct.

19  at 365.  Where the state courts have not addressed the constitutional issue in dispute in any

20  reasoned opinion, the federal court will independently review the record in adjudication of that

21  issue.  "Independent review of the record is not de novo review of the constitutional issue, but

22  rather, the only method by which we can determine whether a silent state court decision is

23  objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

24    Finally, if the state courts have not adjudicated the merits of the federal issue, no

25  AEDPA deference is given; the issue is reviewed de novo under general principles of federal law.

26  James v. Ryan, 679 F.3d 780, 802 (9th Cir. 2012).

1    III.  <u>Analysis</u>

2          A preliminary injunction should not issue unless necessary to prevent threatened

3    injury that would impair the court's ability to grant effective relief in a pending action.  "A

4    preliminary injunction ... is not a preliminary adjudication on the merits but rather a device for

5    preserving the status quo and preventing the irreparable loss of rights before judgment." <u>Sierra</u>

6    <u>On–Line, Inc. v. Phoenix Software, Inc.</u>, 739 F.2d 1415, 1422 (9th Cir.1984).  Where a petitioner

7    simply repeats the basis for his petition for writ of habeas corpus as grounds for preliminary

8    injunctive relief, petitioner does not present a basis for the court to issue any form of preliminary

9    relief.  Such a motion should be denied.  Where, however, as here, the motion for injunctive

10   relief, although going to the merits of the habeas, is brought based on an upcoming parole board

11   hearing wherein the RVR which petitioner seeks to overturn will probably be considered, and

12   which RVR, if considered, may cause parole to be denied, and delay the next parole board

13   hearing for more years than it otherwise would without the RVR, a request for preliminary

14   injunctive relief may be considered.

15         This court has jurisdiction to consider habeas petitions where the petitioner is "in

16   custody pursuant to the judgment of a State court" and alleges that "he is in custody in violation

17   of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A writ of

18   habeas corpus is not limited to immediate release from unlawful confinement, but rather is

19   available to attack future confinement and obtain future releases.  <u>See</u> <u>Preiser v. Rodriguez</u>, 411

20   U.S. 475, 487, 93 S.Ct. 1827 (1973); <u>see</u> <u>also</u> <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1096 n.14

21   (9th Cir. 1986)[1] ("To the extent that defendants may from time to time deny the credits due under

22   sections 2931 and 2933, without affording a prisoner due process of law, that prisoner may

23   obtain habeas corpus relief.").  A prisoner may challenge a prison disciplinary conviction by

24   petition for writ of habeas corpus if the conviction resulted in the loss of good time credits

25   _____

26        [1] <u>Toussaint</u> was overruled in part on other grounds by <u>Sandin v. Conner</u>, 515 U.S. 472, 115
     S.Ct. 2293 (1995).

because credits impact the duration of the prisoner's confinement.  Preiser at 487-88 (suit seeking restoration of good time credits was "within the core of habeas corpus in attacking the very duration of their physical confinement itself").  In dicta, the court in Preiser noted that such a challenge is permissible even if restoration of the credits would not result in the prisoner's immediate release from prison.  Id.

"Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole."  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989); see also Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) ("[W]e understand Bostic's use of the term 'likely' to identify claims with a sufficient nexus to the length of imprisonment so as to implicate, but not fall squarely within, the 'core' challenges identified by the Preiser Court.")

Therefore, although preliminary injunctive relief is sought, the habeas petition itself, and consequently the instant motion, continue to be governed by AEDPA.  Consequently, in considering whether the habeas petition might ultimately be granted, the court must find that the state courts acted unreasonably in denying petitioner's state habeas petitions, and thus the merits of petitioner's motion must be considered in light of this much more formidable hurdle than is usually present in a typical motion for injunctive relief.

Pursuant to Cal. Code Regs. tit.xv, § 2402(a), the BPH is required to determine petitioner's suitability for parole by considering:  his "involvement in other criminal misconduct which is reliably documented;" his "behavior before, during, and after the crime;" and whether he "has engaged in serious misconduct in prison or jail." Cal. Code Regs. tit.xv, § 2402(b), (c)(6) (2010).  Institutional behavior is given additional consideration because "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." Id. § 2402(d)(9). Therefore, the BPH is required to consider petitioner's prison disciplinary record in determining his suitability for parole.

\\\\\

1        Turning to the requirements necessary for a preliminary injunction, respondent

2   first argues that petitioner has failed to show a probability of success on the merits.  Respondent

3   characterizes petitioner's motion as arguing that petitioner's cellmate, Miller, who petitioner

4   alleges attacked him, had agreed to sign a declaration stating that petitioner acted in self defense

5   when attacked by Miller.  Respondent contends that the issue of self defense was not presented in

6   this habeas petition but rather procedural due process violations are the subject of the petition,

7   and therefore petitioner has not shown a probability of success on the merits.

8        It is true that petitioner presented Miller's declaration to the Senior Hearing

9   Officer; however, petitioner also states that the officer "looked at it for a few minutes and said,

10  'Fuck that this ain't nothin but prison politics, Your [sic] guilty.'  Dunn then told the SHO he

11  would go out and get Miller in the hallway if he wanted so he could verify that he agreed with the

12  contents of the declaration.  The SHO then said, 'No, we are done here.'" (Pet.'s Mot. at 6.)  This

13  description of the events indicates clearly that petitioner is objecting to the lack of procedural due

14  process given at his hearing.  Petitioner's motion for injunctive relief and his petition both assert

15  procedural due process violations in the disciplinary hearing.

16       While prisoners may not be wholly deprived of their constitutional rights, "there

17  must be mutual accommodation between institutional needs and objectives and the provisions of

18  the Constitution... ."  Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974).  "Prison

19  disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due

20  a defendant in such proceedings does not apply."  Id.  A prisoner's due process rights must be

21  accommodated to the "legitimate institutional needs" of a prison.  Bostic v. Carlson, 884 F.2d

22  1267, 1269 (9th Cir.1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454–455, 105 S.Ct.

23  2768 [] (1984).  With respect to prison disciplinary proceedings, the minimum procedural

24  requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between

25  the time the prisoner receives written notice and the time of the hearing, so that the prisoner may

26  prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and

reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present

documentary evidence in his defense, when permitting him to do so would not be unduly

hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner

where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563–71.

Confrontation and cross examination are not generally required.  Id. at 567.

       In addition, due process requires that the decision be supported by "some

evidence."  Superintendent v. Hill, 472 U.S. at 455, 105 S.Ct. 2768, citing United States ex rel.

Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927).

In Hill, the United States Supreme Court explained that this standard is met if "there was some

evidence from which the conclusion of the administrative tribunal could be deduced ..."  Id.

"Ascertaining whether this standard is satisfied does not require an examination of the entire

record, independent assessment of the credibility of witnesses, or weighing of the evidence."

Hill, 472 U.S. at 455–456.  Instead, "the relevant question is whether there is any evidence in the

record that could support the conclusion reached by the disciplinary board."  Id.

       The Hill Court provided justification for the less demanding standard:

> We decline to adopt a more stringent evidentiary
> standard as a constitutional requirement.  Prison
> disciplinary proceedings take place in a highly
> charged atmosphere, and prison administrators must
> often act swiftly on the basis of evidence that might
> be insufficient in less exigent circumstances. [] The
> fundamental fairness guaranteed by the Due Process
> Clause does not require the courts to set aside
> decisions of prison administrators that have some
> basis in fact. [] Revocation of good time credits is
> not comparable to a criminal conviction, [] and
> neither the amount of evidence necessary to support
> such a conviction, [] nor any other standard greater
> than some evidence applies in this context.

Id. at 456 [citations omitted].

       "The Federal Constitution does not require evidence that logically

precludes any conclusion but the one reached by the disciplinary board."  Hill, at 457.  Even

9

where the evidence as in <u>Hill</u> "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. <u>Id.</u> Therefore, if the procedures outlined above are afforded to a prisoner, and "some evidence" supports the decision of the hearing officer decision, the requirements of due process are met. <u>Hill</u>, 472 U.S. at 455; <u>Bostic v. Carlson</u>, 884 F.2d at 1269–1270.

There has been no evidence presented as to the advanced written notice of the charges; however, the petition does not allege any violation in this respect. Nor does petitioner allege a violation pertaining to the written statement by the fact-finder outlining the evidence relied upon and the reasons for the disciplinary. (Answer, Ex. 4.) What petitioner claims as a due process violation is the denial of his right to call witnesses at his disciplinary hearing, the failure to investigate or appoint an investigative employee,[2] and "failure to examine the RVR 115 in an impartial manner." (Petition at 2.)

The RVR submitted by respondent states that both a staff assistant and investigative employee were waived by petitioner, and that petitioner did not request any witnesses at his hearing. (Answer, Ex. 4.) In regard to the presentation of documentary evidence in his defense, petitioner states in his motion that he presented a declaration by inmate Miller, the alleged attacker and cellmate, to the SHO; however, this declaration is not mentioned in the RVR. Petitioner has attached the declaration, dated May 17, 2010, and signed by Miller. It is addressed "[t]o whom it may concern," and states that Miller was ordered by a group of white people from Sacramento to attack Dunn because he refused to get into a physical altercation with someone from another race. Because Miller was Dunn's "bunky," he was ordered to do the "roll-up." He then tried to use force to make Dunn roll-up, but Dunn refused. Miller then states: "[I]

---

[2] The answer asserts that the investigative employee claim is not reviewable under the procedural default doctrine; however, it will be considered for purposes of the instant motion only. The court otherwise renders no opinion on this claim.

1 used common sense reasoning until I understood just what the situation really was."  He then

2 explained it to the group and it was resolved.  (Mot., Ex. C.)

3    Petitioner states that he told the SHO if he wanted to verify the contents of the

4 declaration he could call Miller, who was standing outside the hearing room, into the hearing.  In

5 his petition and reply, petitioner argues that under California law, the SHO was required to call

6 his requested witness, Miller, unless he has a legitimate penalogical purpose for not doing so.

7 The specific reason for not permitting the witness must be in writing with a copy to the prisoner.

8 (Doc. no. 30 at 2-3; Petition at 5.)  Petitioner then states that the SHO violated due process by

9 "refus[ing] to call in a witness that he is well aware could have absolved Dunn...." (Id. at 2.)

10    In a separate briefing to the superior court during the exhaustion process,

11 petitioner had argued that he only admitted to the physical altercation because he was threatened

12 with going to the hole if he did not.  (Doc. no. 1 at 25.)  In this filing, petitioner also explained

13 that at the time he signed the RVR stating he did not request witnesses, he was not sure if anyone

14 would testify on his behalf, and it was not until the next day that Miller agreed to sign a

15 declaration and testify.  (Id.)  In a declaration attached to his petition, petitioner states, "[t]he

16 SHO conveniently waited until petitioner had signed all of the necessary forms waiving his right

17 to have a witness present, as he was instructed to do, before he looked at the declaration, then

18 final[l]ly stating 'Fuck this, this aint nothing but prison politics, your guilty.' [Sic.]  Petitioner

19 then again asked to have Miller brought back in, because he was standing right outside.  The

20 SHO denied the request by saying 'we are done here.'" (Doc. no. 1 at 45.)

21    What petitioner also states in this briefing before the superior court is telling:

22    petitioner did not request an investigative employee for him self,
    he felt he had ample evidence demonstrating his innocence.   His

23    assertion is, if the SHO did not want to call [] the witness back in
    the office, as he obviously did not want to do, because there was

24    evidence of innocence, under the correct due process of law he
    should [have] put the disciplinary hearing on hold and appointed an

25    investiga[t]ive employee who could [have] confirmed or negated
    petitioner's contentions.

26

1   (Id. at 26.)  By his own concession, petitioner did not request an investigative employee.

2   Furthermore, as respondent points out, an investigative employee is only warranted where the

3   inmate is illiterate or the issues are complex.  Wolff, 418 U.S. at 570.

4            Petitioner further asserts that he had ample evidence clearly demonstrating his

5   innocence, and he would have been found innocent if the SHO had been impartial.  (Id.)

6            Petitioner's declaration submitted to the superior court states:

7       On 5/14/10 when I signed for my copy of the Rules Violation
        Report (RVR) the C/O asked me if I wanted any witnesses, and I
8       told him that I did but I was not sure exactly who would be
        testifying in my behalf.  He told me 'don't worry about it, just tell
9       who ever holds the hearing, and they will call who ever you want
        in.'  It was not until the next day when I was discussing what
10      happened with Inmate Miller, and I asked him if he would sign a
        declaration stating exactly what happened, and he told me he []
11      would sign it and possibly testify.

12  (Doc. no. 1 at 27.)

13           Petitioner contends that the SHO's refusal to call inmate Miller into the hearing as

14  a witness, failure to consider Miller's declaration, failure to appoint an investigative employee,

15  and commentary in response to reviewing Miller's declaration, as cited *supra*, all reflect his lack

16  of impartiality.

17           Due process in prison disciplinary hearings requires an impartial decision maker

18  who does not suppress evidence of innocence.  Wolff, 418 U.S. at 570-71; Hill, 472 U.S. at 454.

19  The aforementioned evidence is not sufficient to find that the SHO was impartial in petitioner's

20  disciplinary hearing.  For this motion only, the court finds that petitioner concedes that he did not

21  request any witnesses in advance of the hearing, and at the time of the hearing his statements are

22  somewhat inconsistent.  He states he offered to bring Miller into the hearing room as a witness if

23  the SHO needed further clarification, but did not insist.  He separately states that he did request

24  Miller as his witness.  He also did not request an investigative employee but left it up to the SHO

25  to request one if he had a problem with finding clear evidence of petitioner's innocence.

26  Petitioner does not dispute that he waived a staff assistant and investigative employee, and did

1    not request witnesses at his hearing, as the RVR reflects.

2              Furthermore, some evidence is supplied by the RVR which refers to the CDCR

3    115 wherein petitioner admitted to being in a physical altercation with his cellmate, Miller.  A

4    7219 medical clearance reflected that petitioner had a bruised right eye and bruised right lower

5    leg. (Answer, Ex. 4 at 2.)  Miller separately admitted to a physical altercation with petitioner,

6    despite the fact that a medical evaluation of this prisoner indicated no injuries.  (Id.)  Respondent

7    represents that the SHO did consider petitioner's documentary evidence, referring to the RVR;

8    however, this report does not mention the Miller declaration or any other documentary evidence

9    submitted by petitioner.  (Answer, Ex. 4.)  Respondent also contends in the answer that the SHO

10   considered Miller's claims and found them not believable, referring to Exhibit 1 at 3; however,

11   this exhibit contains only one page. (Doc. no. 24-1.)  These facts in the report meet the

12   deferential "some evidence" standard for purposes of this preliminary injunction motion.[3]

13   Therefore, petitioner has not shown a likelihood of success on the merits.

14             Respondent next argues that petitioner has failed to make a showing of an

15   irreparable injury because although the BPH can deny parole and set the next hearing fifteen

16   years down the road, it has discretion to advance a hearing based on a finding that a lengthier

17   period of incarceration is unnecessary.  Respondent argues that the harm is speculative because

18   the possibility that the BPH will deny parole based solely on the subject RVR and set the next

19   parole hearing fifteen years hence, is too remote.

20             This argument is not persuasive.  In the first place, as noted above, a challenge by

21   a prisoner to a prison disciplinary conviction by a habeas corpus petition if the conviction

22   resulted in the loss of good time credits and seeking restoration of such credits comes "within the

23   core of habeas corpus in attacking the very duration of their physical confinement itself").

24

25          [3] In the answer, respondent argues that petitioner failed to challenge the sufficiency of the
     evidence and therefore he has waived any such challenge.  That contention will not be considered
26   for this motion only.

1   Preiser at 487-88.  Further, reversal or expungement of petitioner's conviction for the rules

2   violation, if warranted, is both "likely" to accelerate his eligibility for parole, Bostic, 884 F.2d at

3   1269, and "could potentially affect the duration of [his] confinement."  Docken, 393 F.3d at

4   1031.  See, e.g., Avina v. Adams, 2011 WL 6752407 *18 (Case No.1:10-0790) (E.D. Cal. Dec.

5   23, 2011) (recommending denial of motion to dismiss petitioner's challenge where he was

6   assessed a time credit loss at a prison disciplinary hearing, alternatively, finding that

7   expungement of the disciplinary finding potentially could affect his duration of confinement),

8   adopted by order, see Avina v. Adams, 2012 WL 1130610 *1-3 (E.D. Cal. Mar 30, 2012); Allen

9   v. Swarthout, 2011 WL 2680756 (2:10-cv-3257 GEB GGH P)(E.D. Cal. Jul 8, 2011) (order

10   adopting findings and recommendations[4] of the undersigned, denying motion to dismiss

11   challenge to prison disciplinary that did not result in time credit loss because it could affect his

12   next BPH hearing and release); Murphy v. Dep't of Corrs. & Rehabilitation, 2008 WL 111226 at

13   *7 (N.D. Cal. Jan. 9, 2008) (habeas corpus jurisdiction is proper to challenge a disciplinary guilty

14   finding because "[a]s a matter of law, it is well established that a disciplinary violation may

15   affect the duration of an inmate's confinement"); Drake v. Felker, 2007 WL 4404432 at *2 (2:07-

16   cv-0577 JKS) (E.D. Cal. Dec. 13, 2007) (habeas corpus jurisdiction found to exist over a

17   challenge to a disciplinary decision because "a negative disciplinary finding, at least in

18   California, necessarily affects potential eligibility for parole").

19        Based on the record in the instant case, the undersigned finds that petitioner has

20   made a showing of irreparable injury.  It is true that the disciplinary finding for fighting is

21   "criminal misconduct which is reliably documented."  Cal. Code Regs. tit. 15 § 2402(b).  The

22   BPH is required to consider the violation because it reflects on petitioner's behavior "after the

23   crime."  Id.  It is the arguably idiosyncratic ruling of Bostic[5] which must prevail.  It is at least

_____

[4]   See Allen v. Swarthout, 2011 WL 2075713 at *1-3 (E.D. Cal. May 23, 2011).

[5]   Indeed, the undersigned, bound by the ruling of Bostic, is puzzled by its rationale and its
applicability in the habeas setting, without which the court would not find petitioner had stated a

1   'likely' that expungement of the disciplinary finding could accelerate petitioner's eligibility for

2   parole at any future parole hearing.

3           Furthermore, it is mere sophistry that a parole board hearing would be advanced if

4   a habeas petition is granted and the RVR is overturned.  See Gilman v. Brown, 2011 WL

5   3163260, *4 (E.D. Cal. Jul. 25, 2011) (on remand from Gilman v. Schwarzenegger, wherein

6   plaintiffs presented evidence on how very little the advanced hearing process is utilized in

7   practice).  Although it is possible that expungement of the disciplinary finding could accelerate

8   petitioner's parole eligibility in theory, in practice it is not likely to happen.  Id.  Cf. Gilman v.

9   Schwarzenegger, 638 F.3d 1101, 1109-1111 (9th Cir. 2011) (prior to receiving statistical and

10  anecdotal evidence, the court found plaintiffs had not presented sufficient evidence to show that

11  Proposition 9 posed a significant risk of prolonging a prisoner's incarceration).

12          Nevertheless, because the AEDPA standards are so stringent, petitioner has failed

13  to present sufficient grounds to preliminarily vacate his prison disciplinary so that the BPH is

14  prevented from considering it.  Petitioner's most viable claims are that the adjudicator was not

15  impartial and that he was prevented from having a witness testify; however, the record evidences

16  conflicting facts and inconsistent statements on these issues such that it cannot be stated that the

17  state courts applied the law in an unreasonable manner.  Petitioner's case is simply not

18  compelling enough to warrant relief under these standards.

19          Furthermore, it is possible that on habeas review, which will occur sooner rather

20  than later, the court may determine that petitioner's habeas should be granted, and at that time

21  order a variety of relief, such as that the RVR be expunged and a new parole hearing take place

22  within a certain time period.  For this reason, that petitioner may have to wait a few months for a

23  habeas decision, which theoretically could result in a new parole hearing shortly thereafter,

24  irreparable injury is not demonstrated.  It is furthermore unclear whether, if petitioner's motion

25  

26  federal habeas claim in this context.

1  were granted, this court would have authority to order the Parole Board to refrain from

2  considering the RVR at issue in the next parole hearing.

3          Based on this analysis, the balance of competing claims weighs in favor of

4  denying the motion.[6]

5  CONCLUSION

6          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's motion for

7  preliminary injunction, filed January 2, 2013 (doc. no. 28), be denied.

8          These findings and recommendations are submitted to the United States District

9  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

10 days after being served with these findings and recommendations, any party may file written

11 objections with the court and serve a copy on all parties.  Such a document should be captioned

12 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13 shall be served and filed within fourteen days after service of the objections.  The parties are

14 advised that failure to file objections within the specified time may waive the right to appeal the

15 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16 DATED: March 6, 2013

17

18                          /s/ Gregory G. Hollows
                     UNITED STATES MAGISTRATE JUDGE

19

20 GGH:076/dunn2731.pi.wpd

21

22         [6]   The court also notes that the United States Supreme Court fairly recently held that the
   Ninth Circuit erred in commanding a federal review of the state's application of state law in applying
23 the "some evidence" standard in the parole eligibility habeas context.  Swarthout v. Cooke,      U.S.
   ___, 131 S. Ct. 859, 861 (2011).  However, the undersigned does not find that Swarthout controls
24 in this situation.  While Swarthout indeed fundamentally altered the landscape of parole habeas law,
   its holding is not closely related enough to Bostic, so as to overrule Bostic.  If Bostic is indeed
25 overruled in light of Swarthout, that is not for this court to decide.  Bostic is still good law in the
   Ninth Circuit and petitioner has demonstrated that it is at least 'likely' that expungement of the
26 disciplinary finding could accelerate his eligibility for parole.