1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                 FOR THE EASTERN DISTRICT OF CALIFORNIA

9   JOHN DUNN,

10            Petitioner,                 No. 2: 11-cv-2731 JAM GGH P

11         vs.

12   GARY SWARTHOUT, et al.,

13            Respondents.               ORDER; FINDINGS AND RECOMMENDATION

14   _____/

15   INTRODUCTION

16            Petitioner, a state prisoner proceeding pro se, has filed an application for writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  On September 26, 2012, the district court adopted

18   this court's findings and recommendations, denied respondent's motion to dismiss for failure to

19   state grounds for federal habeas relief, and ordered an answer.  Respondent filed an answer on

20   November 20, 2012, and petitioner filed a traverse on December 26, 2012.   By order of April 29,

21   2013, the district court adopted the findings and recommendations of March 7, 2013, and denied

22   petitioner's motion for preliminary injunction.  After carefully considering the record, the court

23   has determined that an evidentiary hearing is warranted on the witness issue.  The petition should

24   be denied with respect to the remaining issues.  Also before the court is petitioner's request to

25   file a supplemental petition.  That request is denied.

26   /////

1  BACKGROUND

2          Petitioner challenges a prison disciplinary guilty finding for fighting that resulted

3  in 61 days of credit loss, which petitioner also claims could lead to a seven-to-fifteen-year denial

4  by the Board of Parole Hearings (BPH).  (Petition, at doc. no. 1, p. 1.)

5          According to the Rules Violation Report, on May 11, 2010 petitioner and his

6  cellmate, inmate Miller, were interviewed based on an anonymous note found in the outgoing

7  mail.  At the time of the interview, Dunn had visible injuries consistent with having been in a

8  fight.  Petitioner admitted to having been in a physical altercation with Miller on May 8, 2010.  A

9  medical clearance was then conducted which indicated that petitioner had a bruised right eye and

10 bruised right lower leg.  Inmate Miller was then interviewed and he admitted to the physical

11 altercation with petitioner, but did not recall the date.  A medical evaluation of Miller was then

12 conducted and he exhibited no injuries.  Both inmates stated that this issue was resolved and

13 agreed they could coexist on the same yard without further incident.  (Petn., Ex. A.)

14         Petitioner insists that he was the victim of this attack, and that evidence included a

15 declaration by one of his attackers which states that petitioner had refused to fight with another

16 Asian inmate, which initiated this incident.  (Doc. no. 1 at 28.)  Petitioner claims that his

17 cellmate was ordered to attack him because he had refused to fight the Asian inmate who had

18 reportedly struck or poked his finger in petitioner's face.  (Id. at 30-31.)

19         When petitioner was interviewed after the altercation, he was told by a sergeant

20 that "he could make 'this whole thing go away if we just signed a Marriage Chrono'" and that it

21 would just be placed in his C file.  (Id. at 32.)  If petitioner refused to agree to this resolution, he

22 was informed that he would be placed in the hole, and that when the investigative officer

23 finished, it would not look good for petitioner when he went before the BPH in a few weeks.

24 When the chrono was finally presented to petitioner to sign, he realized for the first time that he

25 would be receiving a 115.  He was informed, "well you can sign it or you can go to the whole."

26 (Id. at 33.)

Petitioner claims that at the disciplinary he was prevented from introducing a declaration signed by inmate Miller which stated that petitioner was indeed the victim.  He further contends that there was ample evidence to demonstrate that petitioner was the victim in this case and that the senior hearing officer ("SHO") should have appointed an investigative employee if he did not want to investigate the incident.  Petitioner lastly alleges that the SHO was not impartial and had determined that petitioner was guilty before he entered the disciplinary hearing, based on his statement to petitioner denying the admission of Miller as a witness, and telling petitioner that he was guilty and that he was done with the hearing.  (Id. at 45.)

Petitioner alleges various due process violations regarding the disciplinary hearing and finding.  (Id.)  The grounds for relief are: (1) that the prison denied due process rights by failing to allow inmate Miller be a witness at petitioner's disciplinary hearing, despite petitioner's written request; (2) that the prison's failure to appoint an investigative employee violated petitioner's right to a fair hearing; and (3) that prison officials did not conduct the disciplinary hearing in an impartial manner, thus violating the due process clause.[1]

DISCUSSION

I. Petitioner's Motion to Supplement the Petition

On July 3, 2013, petitioner filed a motion to submit a supplemental brief because of certain events which have occurred since the original habeas petition was filed.  He claims that in March, 2012, he was attacked by inmate Axley and inmate Degaton.  He states that "[t]his happened because Axley became aware Dunn had named him as the main perpetrator in the original petition."  Petitioner claims that as a result he had to be transferred from CSP-Solano to San Quentin State Prison for his safety.  At the disciplinary hearing concerning this incident, petitioner claims that the prison committed similar due process violations in refusing to permit witnesses, and that the decision maker was biased.  This motion contains another declaration by

---

[1] To the extent that petitioner attempts to raise a "some evidence" issue in the traverse, the undersigned declines to adjudicate habeas issues raised for the first time in a traverse.

1  inmate Miller, attempting to clarify his previous declaration submitted with the habeas petition,

2  which restates the information previously set forth and recounts a conversation between him and

3  petitioner just after the 2010 disciplinary.

4      This motion pertains to a separate incident and is therefore of little relevance to

5  the initial attack/altercation which is at issue in this habeas petition.  Moreover, it constitutes a

6  new claim which has not been exhausted.  Petitioner is advised that if he seeks to contest the

7  handling of a later disciplinary hearing, he should file a new habeas petition.  Petitioner's motion

8  is denied.

9      II.  AEDPA Standards

10     The statutory limitations of federal courts' power to issue habeas corpus relief for

11  persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

12  Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

13         An application for a writ of habeas corpus on behalf of a person in
           custody pursuant to the judgment of a State court shall not be
14         granted with respect to any claim that was adjudicated on the
           merits in State court proceedings unless the adjudication of the
15         claim-

16             (1) resulted in a decision that was contrary to, or
               involved an unreasonable application of, clearly
17             established Federal law, as determined by the
               Supreme Court of the United States; or
18
               (2) resulted in a decision that was based on an
19             unreasonable determination of the facts in light of
               the evidence presented in the State court
20             proceeding.

21     As a preliminary matter, the Supreme Court has recently held and reconfirmed

22  "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to

23  have been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S. Ct. 770, 785 (2011).

24  Rather, "when a federal claim has been presented to a state court and the state court has denied

25  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

26  of any indication or state-law procedural principles to the contrary."  Id. at 784-785, citing Harris

4

1   v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when

2   it is unclear whether a decision appearing to rest on federal grounds was decided on another

3   basis).  "The presumption may be overcome when there is reason to think some other explanation

4   for the state court's decision is more likely."  Id. at 785.

5          The Supreme Court has set forth the operative standard for federal habeas review

6   of state court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an

7   *unreasonable* application of federal law is different from an *incorrect* application of federal

8   law.'"  Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S.

9   Ct. 1495 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas

10  relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

11  decision."  Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

12  Accordingly, "a habeas court must determine what arguments or theories supported or . . could

13  have supported[] the state court's decision; and then it must ask whether it is possible fairminded

14  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

15  decision of this Court."  Id.  "Evaluating whether a rule application was unreasonable requires

16  considering the rule's specificity.  The more general the rule, the more leeway courts have in

17  reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the stringency of this

18  standard, which "stops short of imposing a complete bar of federal court relitigation of claims

19  already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a

20  strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id.,

21  citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

22         The undersigned also finds that the same deference is paid to the factual

23  determinations of state courts.  Under § 2254(d)(2), factual findings of the state courts are

24  presumed to be correct subject only to a review of the record which demonstrates that the factual

25  finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in

26  light of the evidence presented in the state court proceeding."  It makes no sense to interpret

1  "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in

2  § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the

3  same record could not abide by the state court factual determination.  A petitioner must show

4  clearly and convincingly that the factual determination is unreasonable.  See Rice v. Collins, 546

5  U.S. 333, 338, 126 S. Ct. 969, 974 (2006).

6          The habeas corpus petitioner bears the burden of demonstrating the objectively

7  unreasonable nature of the state court decision in light of controlling Supreme Court authority.

8  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must

9  show that the state court's ruling on the claim being presented in federal court was so lacking in

10 justification that there was an error well understood and comprehended in existing law beyond

11 any possibility for fairminded disagreement."  Harrington, supra, 131 S. Ct. at 786-787.  "Clearly

12 established" law is law that has been "squarely addressed" by the United States Supreme Court.

13 Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008).  Thus, extrapolations of

14 settled law to unique situations will not qualify as clearly established.  See, e.g., Carey v.

15 Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state

16 sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

17 prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

18 established law when spectators' conduct is the alleged cause of bias injection).  The established

19 Supreme Court authority reviewed must be a pronouncement on constitutional principles, or

20 other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

21 federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

22          The state courts need not have cited to federal authority, or even have indicated

23 awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8, 123 S. Ct.

24 at 365.  Where the state courts have not addressed the constitutional issue in dispute in any

25 reasoned opinion, the federal court will independently review the record in adjudication of that

26 issue.  "Independent review of the record is not de novo review of the constitutional issue, but

1  rather, the only method by which we can determine whether a silent state court decision is

2  objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

3          Finally, if the state courts have not adjudicated the merits of the federal issue, no

4  AEDPA deference is given; the issue is reviewed *de novo* under general principles of federal law.

5  Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011).

6      III.  Analysis

7          A prisoner may challenge a prison disciplinary conviction by petition for writ of

8  habeas corpus if the conviction resulted in the loss of good time credits because credits impact

9  the duration of the prisoner's confinement. Preiser v. Rodriguez, 411 U.S. 475, 487-88, 93 S. Ct.

10  1827 (1973) (suit seeking restoration of good time credits was "within the core of habeas corpus

11  in attacking the very duration of their physical confinement itself"). In dicta, the court in Preiser

12  noted that such a challenge is permissible even if restoration of the credits would not result in the

13  prisoner's immediate release from prison. Id.

14          "Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a

15  disciplinary finding from his record if expungement is likely to accelerate the prisoner's

16  eligibility for parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989); see also Docken

17  v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) ("[W]e understand Bostic's use of the term

18  'likely' to identify claims with a sufficient nexus to the length of imprisonment so as to

19  implicate, but not fall squarely within, the 'core' challenges identified by the Preiser Court.")

20          Pursuant to CAL. CODE REGS. tit.xv, § 2402(a), the BPH is required to determine

21  petitioner's suitability for parole by considering:  his "involvement in other criminal misconduct

22  which is reliably documented;" his "behavior before, during, and after the crime;" and whether

23  he "has engaged in serious misconduct in prison or jail." CAL. CODE REGS. tit.xv, § 2402(b), (c)(6)

24  (2010). Institutional behavior is given additional consideration because "[i]nstitutional activities

25  indicate an enhanced ability to function within the law upon release." Id. § 2402(d)(9).

26  Therefore, the BPH is required to consider petitioner's prison disciplinary record in determining

1  his suitability for parole.

2         In the only reasoned opinion, the Superior Court for the County of Solano found

3  some evidence to support the decision of the hearing officer in that "[p]etitioner admitted to

4  being in a physical altercation with Inmate Miller during an interview with Officer Orgazan," and

5  he signed the general chrono making the same admission.  (Doc. no. 1 at 22.)  The superior court

6  also found that according to the CDC 115 RVR, petitioner did not request any witnesses for his

7  hearing, and that even if he had requested inmate Miller as a witness, he failed to show prejudice.

8  Furthermore, the court found that petitioner had provided no evidence indicating the senior

9  hearing officer was biased.  Petitioner also failed to show that he had exhausted administrative

10  remedies regarding his claim that he should have been appointed an investigative employee.  (Id.)

11         While prisoners may not be wholly deprived of their constitutional rights, "there

12  must be mutual accommodation between institutional needs and objectives and the provisions of

13  the Constitution... ."  Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963 (1974).  "Prison

14  disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due

15  a defendant in such proceedings does not apply."  Id.   A prisoner's due process rights must be

16  accommodated to the "legitimate institutional needs" of a prison.  Bostic v. Carlson, 884 F.2d

17  1267, 1269 (9th Cir.1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455, 105 S. Ct.

18  2768 [] (1984).  With respect to prison disciplinary proceedings, the minimum procedural

19  requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between

20  the time the prisoner receives written notice and the time of the hearing, so that the prisoner may

21  prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and

22  reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present

23  documentary evidence in his defense, when permitting him to do so would not be unduly

24  hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner

25  where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563-71.

26  Confrontation and cross examination are not generally required.  Id. at 567.

In addition, due process requires that the decision be supported by "some evidence." Superintendent v. Hill, 472 U.S. at 455, 105 S. Ct. 2768, citing United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106, 47 S. Ct. 302, 71 L.Ed. 560 (1927). In Hill, the United States Supreme Court explained that this standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced ..." Id. "Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 455-456. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id.

The Hill Court provided justification for the less demanding standard:

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. [] The fundamental fairness guaranteed by the Due Process Clause does not require the courts to set aside decisions of prison administrators that have some basis in fact. [] Revocation of good time credits is not comparable to a criminal conviction, [] and neither the amount of evidence necessary to support such a conviction, [] nor any other standard greater than some evidence applies in this context.

Id. at 456 [citations omitted].

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Hill, at 457. Even where the evidence as in Hill "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. Id. Therefore, if the procedures outlined above are afforded to a prisoner, and "some evidence" supports the decision of the hearing officer decision, the requirements of due process are met. Hill, 472 U.S. at 455; Bostic v. Carlson, 884 F.2d at

1269-1270.

*Failure to Call a Witness*

In regard to Ground One, petitioner argues that Miller signed a declaration, dated May 17, 2010, stating that Miller was ordered by a group of white people from Sacramento to attack Dunn because he refused to get into a physical altercation with someone from another race.  Because Miller was Dunn's "bunky," he was ordered to do the "roll-up."  He then tried to use force to make Dunn roll-up, but Dunn refused.  Miller then states: "[I] used common sense reasoning until I understood just what the situation really was."  Miller then explained the situation to the group who had ordered the attack and the issue was resolved.  (Miller Dec., doc. no. 1 at 57.)

According to petitioner's declaration, he presented Miller's declaration to the Senior Hearing Officer who "looked at it for a few minutes and said, 'Fuck that this ain't nothin but prison politics, Your [sic] guilty.'  Dunn then told the SHO he would go out and get Miller, who was waiting in the hallway, so he could verify that he agreed with the contents of the declaration.  The SHO then said, 'No, we are done here.'" (Dunn Dec., doc. no. 1 at 45.)

The RVR submitted by respondent states that both a staff assistant and investigative employee were waived by petitioner, and that petitioner did not request any witnesses at his hearing.  (Answer, Ex. 4.)  The aforementioned declaration by Miller is not mentioned in the RVR.

Petitioner argues that under California law, the SHO was required to call his requested witness, Miller, unless he has a legitimate penalogical purpose for not doing so.  The specific reason for not permitting the witness must be in writing with a copy to the prisoner.  (Doc. no. 1 at 40.)  Petitioner argues that the SHO violated due process by failing to call a witness that he knew could have absolved petitioner.

In a separate briefing to the superior court during the exhaustion process, petitioner had argued that he only admitted to the physical altercation because he was threatened

1  with going to the hole if he did not.  (Doc. no. 1 at 25.)  In this filing, petitioner also explained

2  that at the time he signed the RVR stating he did not request witnesses, he was not sure if anyone

3  would testify on his behalf, and it was not until the next day that Miller agreed to sign a

4  declaration and testify.  (Id.)  In his petition, petitioner argues, "[t]he SHO conveniently waited

5  until petitioner had signed all of the necessary forms waiving his right to have a witness present,

6  as he was instructed to do, before he looked at the declaration, then final[l]ly stating 'Fuck this,

7  this aint nothing but prison politics, your guilty.' [Sic.]  Petitioner then again asked to have

8  Miller brought back in, because he was standing right outside.  The SHO denied the request by

9  saying 'we are done here.'" (Doc. no. 1 at 42.)

10         The pertinent text of petitioner's declaration bears repeating:

11             After I finished signing the papers, as I was instructed to do, and
               while Lt. Fecht was examining the Declaration, I told him if he did
12             not believe what was in the declaration, he could call Inmate Miller
               back in and ask him[] because he had just held his hearing on the
13             same RVR 115.  Also, when I passed Miller on the way into the
               Lieutenant's office, I told him to wait outside, because they might
14             be calling him back in as a witness.  After a short delay in which it,
               somewhat, appeared to me that he was rather agitated, he said
15             "Fuck this, this aint nothing but prison politics.  your guilty" [Sic.]
               *I then again asked him to call Miller back in* to verify that he
16             agreed with what was stated in the declaration.  At that point he
               said we are done here, and adjourned the hearing.

17

18  (Petitioner's Decl., Doc. no. 1 at 45.) (emphasis added.)  This identical declaration was presented

19  to the state superior court.  (Doc. no. 24-1 at 25.)

20         The superior court decision, however, makes no mention of petitioner's

21  declaration, but mentions only Inmate Miller's declaration and the CDC 115 rules violation

22  report.  (Doc. no. 1 at 21-23.)  The portion of the decision addressing petitioner's due process

23  denial of his request to call a witness refers only to the rules violation report which indicated that

24  petitioner did not request any witnesses.  In fact, petitioner's declaration submitted to that court

25  stated that petitioner verbally requested Inmate Miller as his witness.  Without conducting an

26  evidentiary hearing to determine the credibility of petitioner's declaration, the Superior Court

1    made a factual determination based upon only one piece of evidence, the RVR, while completely

2    ignoring petitioner's declaration.

3            Ordinarily, the state court's factual findings would be entitled to a presumption of

4    correctness under AEDPA.  28 U.S.C. § 2254(e)(1).  However, such deference is only warranted

5    if the state court's fact-finding process survives the dictates of § 2254(d)(2).  In other words, the

6    state court decision must not be "based on an unreasonable determination of the facts."  28

7    U.S.C. § 2254(d)(2).  See also Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("deference does

8    not imply abandonment or abdication of judicial review.")  As the Ninth Circuit has recently

9    reaffirmed, a state court determination of factual issues not supported by the record, without an

10   evidentiary hearing on those issues, is per se unreasonable.  Hurles v. Ryan, 706 F.3d 1021, 1038

11   (9th Cir. 2013) ("We have held repeatedly that where a state court makes factual findings without

12   an evidentiary hearing or other opportunity for the petitioner to present evidence, 'the fact-

13   finding process itself is deficient' and not entitled to deference [under AEDPA].").  See also

14   Perez v. Rosario, 459 F.3d 943, 950 (9th Cir. 2006) ("In many circumstances, a state court's

15   determination of the facts without an evidentiary hearing creates a presumption of

16   unreasonableness."); Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004) ("[W]here the state

17   courts plainly misapprehend or misstate the record in making their findings, and the

18   misapprehension goes to a material factual issue that is central to petitioner's claim, that

19   misapprehension can fatally undermine the fact-finding process, rendering the resulting factual

20   finding unreasonable."); Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003) ("[W]ith the

21   state court having refused [petitioner] an evidentiary hearing, we need not of course defer to the

22   state court's factual findings—if that is indeed how those stated findings should be

23   characterized—when they were made without such a hearing."); Williams v. Woodford, 2012

24   WL 929666 (E.D. Cal. Mar. 19, 2012) ("Under this circuit's precedent, '[i]f . . . a state court

25   makes evidentiary findings without holding a hearing and giving petitioner an opportunity to

26   present evidence, such findings clearly result in an 'unreasonable determination' of the facts.'").

Here, the Solano County Superior Court made a factual finding based on a rules violation report stating that no witness was requested, which was directly inconsistent with petitioner's own declaration setting forth his request for a witness at his disciplinary hearing. Despite this inconsistency, the superior court relied on the RVR (a simple check box form) to support its factual finding that petitioner did not request any witnesses at his hearing. The Superior Court not only failed to consider and potentially reject petitioner's declaration, it omitted any reference to this piece of evidence. It then relied on a directly contradictory RVR to support its factual conclusion. Its perfunctory conclusion finding that even if petitioner had requested Inmate Miller as a witness, he has not shown prejudice, is clearly contradicted by petitioner's own declaration which states that Inmate Miller was ordered to attack petitioner, and that petitioner refused to fight with him,[2] which is also supported by Miller's own declaration, which was additionally presented to the Superior Court. Under these circumstances, and based on the authorities cited above, it was unreasonable for the Solano County Superior Court to find, based solely on the RVR, that petitioner did not request any witnesses at his hearing. Additional evidence was required in order to make that factual determination. In short, petitioner's due process claim cannot be resolved by reference to the state court record because that record is inconclusive with respect to a critical fact necessary to resolve that claim.

Accordingly, the Superior Court's decision was based on an unreasonable determination of the facts and is not entitled to deference. See Winston v. Kelly, 592 F.3d 535, 555-56 (4th Cir. 2010) ("[i]f the record ultimately proves to be incomplete, deference to the state court's judgment would be inappropriate because judgment on a materially incomplete record is not an adjudication on the merits for purposes of § 2254(d).").  Because petitioner has overcome

---

[2] A 7219 medical clearance reflected that petitioner had a bruised right eye and bruised right lower leg. (Answer, Ex. 4 at 2.) Miller separately admitted to a physical altercation with petitioner, despite the fact that a medical evaluation of this prisoner indicated no injuries. (Id.)  This evidence of injuries on petitioner and lack of injuries on his cellmate is the most striking verifiable evidence, as reflected in respondent's own RVR, that petitioner was attacked and refused to fight.

the limitation of § 2254(d)(2) on the record that was before the state court, this federal habeas court is not prevented from taking evidence with respect to petitioner's due process claim that he was denied the right to call witnesses at his disciplinary hearing.  See Pinholster, 131 S. Ct. at 1400 (If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d) on the record that was before the state court in order to be entitled to an evidentiary hearing); see also Detrich v. Ryan, 677 F.3d 958 (9th Cir. 2012) (Under the decision in Pinholster, "section 2254(e)(2) is to be interpreted in a way that does not preclude a state prisoner who was diligent in state habeas court and who can satisfy § 2254(d) from receiving an evidentiary hearing."); Williams, 2012 WL 929666, at *6.

When the failure to develop a factual basis for the claim in state court is through no fault of petitioner, petitioner must make a colorable claim for relief and meet one of the Townsend factors in order to obtain an evidentiary hearing.  Insyxiengmay v. Morgan, 403 F.3d 657, 670-71 (9th Cir.2005).

> Where a habeas petitioner has not failed to develop the factual basis of his claim in state court as required by 28 U.S.C. § 2254(e)(2), an evidentiary hearing is required if (1) the petitioner has shown his entitlement to an evidentiary hearing pursuant to Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and (2) the allegations, if true, would entitle him to relief. Stanley, 598 F.3d at 624. ... Under Townsend, a federal court must grant an evidentiary hearing in circumstances present here: (1) the state courts factual determinations are not fairly supported by the record as a whole, and (2) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing. Townsend, 372 U.S. at 313, 83 S.Ct. 745.

Hurles v. Ryan, 706 F.3d 1021, 1039 (9th Cir. 2013).

> [A] federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact

1    did not afford the habeas applicant a full and fair fact hearing.

2    Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745 (1963), overruled on other grounds by

3    Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S. Ct. 1715 (1992).

4    　　　　Townsend continues to apply after Pinholster.  See Hibbler v. Benedetti, 693 F.3d

5    1140, 1147 (9th Cir. 2012) (noting that Townsend governs when a federal court reviewing a

6    petition de novo must grant an evidentiary hearing); U.S. v. Thoms, 684 F.3d 893 (9th Cir. 2012)

7    (acknowledging demeanor evidence is significant where unresolved factual dispute exists, citing

8    Townsend); Kemp v. Ryan, 638 F.3d 1245, 1258 (9th Cir. 2011) (applying Townsend factors

9    after Pinholster where petitioner not at fault in failure to develop factual basis for claim in state

10   court); Williams v.  Woodford, 2012 WL 929666, *4-5 (E.D. Cal. Mar. 19, 2012) (Kozinski, J.

11   sitting by designation) (concluding that a state court decision on petitioner's claim of ineffective

12   assistance of counsel was based on an unreasonable determination of the facts by the state court

13   which made assumptions about facts outside the record without giving petitioner an opportunity

14   to present evidence, conduct discovery, or otherwise develop the record as to those facts, and

15   distinguishing Pinholster because petitioner was not allowed to develop the record in state court).

16   　　　　In Gonzalez v. Wong, 667 F.3d 965, 1016 (9th Cir. 2011) (Fletcher, J. concurring

17   in part), Justice Fletcher discussed the inconsistency that would result if Pinholster is read to

18   apply to where the failure to introduce evidence in state court is the fault of the court because that

19   would be "inconsistent with one of the traditional purposes of federal habeas relief, which is to

20   remedy inadequate state court factfinding."  This concurrence emphasized the importance of the

21   Townsend factfinding procedure by stating: "[t]o hold that an improper state court denial of

22   discovery necessary to develop a federal constitutional claim prevents a federal court from

23   considering in the first instance evidence discovered during federal habeas unnecessarily binds

24   the federal court to the inadequate factfinding of the state court."  Id.

25   　　　　Similarly, here the Solano County Superior Court's decision that petitioner did not

26   request any witnesses during his disciplinary hearing was rendered without the benefit of

sufficient evidence necessary to support that finding.  Not only did the Superior Court fail to resolve the factual dispute of whether petitioner requested a witness at his disciplinary hearing, it failed to even mention petitioner's declaration outlining his asserted request for inmate Miller to testify at the hearing.  Although it may certainly be the case that after-the-fact declarations concerning prison altercations are  self-serving, it is also without question the case in some instances that inmates get attacked and are merely trying to defend themselves, or in this case, perhaps not even fighting back.

It could be in some cases that a Superior Court's terse findings are underlain by a detailed discussion by the administrative judge, here the SHO.  It would be unreasonable for federal courts not to make  findings about the need for a federal evidentiary hearing without at least one eye on the proceedings before the SHO, and justifiable inferences about what a Superior Court relied upon can be made in light of such a record.  However, just the opposite occurred here.  The SHO made a reflexive "prison politics" statement, if petitioner is to be believed, without the least bit of effort to describe why, in this case, he believed that.  Certainly, not *every* witness statement in prison is "prison politics;" if such were the case it makes no sense to have hearings at all, i.e., we all know what the final result will be before the hearing is held.  Nor is the court finding that disciplinary hearing officers have to hold trial like proceedings.  Prison is a very busy place, and hearing officers are tasked with a multitude of duties, each one competing for the officer's time.  However, there does come a time when a little effort must be expended in fairness sake.  Not only was the live witness right outside the door ignored, the officer made no credibility findings except for his generally held belief that apparently all witness statements exonerating an inmate are pure "politics," not even worthy of a question or two.  While it may certainly have been possible that "prison politics" were the genesis of Miller's declaration and potential live testimony, the officer had a duty to specify, *why in this case*, such was so.  Therefore, no inferences in favor of the Superior Court's factual decision can be made from this record.

Without citation to the governing CCR, 15 CCR 3005 (the section with which petitioner was found to have violated), the Superior Court also found that if the declaration/potential testimony was accepted, the evidence therein was immaterial.  The undersigned cannot agree. Section 3005 (d) provides in pertinent part that inmates shall not "willfully commit...an assault or battery...nor attempt or threaten the use of force or violence upon another person."  Being a victim in an assault, if petitioner's witness is to be believed, or fending off an attacker's blows, does not qualify as assault/battery on the attacking inmate, nor does simply defending onself from injury qualify as the "willful" "attempted" use of force or violence on another person.  An interpretation that one must simply acquiesce in a beating, to the point of serious injury or death, would lead to serious substantive due process concerns.  Miller's testimony, again, if believed, demonstrates much less than a "mutual combatant" situation.  On its face, the Miller testimony is quite material.

As in <u>Williams</u>, the Superior Court's failure to conduct an evidentiary hearing "violated petitioner's right to a fair process for developing the record supporting his claim, in violation of <u>Taylor</u> [v. Maddox] and <u>Hurles</u> [v. Ryan]."  <u>Id.</u> at *5.  Under these circumstances, petitioner has overcome the limitation of § 2254(d)(2) on the record that was before the state court with respect to his violation of due process claim in regard to calling inmate Miller as a witness.  <u>Id.</u>  Accordingly, the decision in <u>Pinholster</u> does not preclude the holding of an evidentiary hearing in this court.

*Bias and Investigative Employee*

In his traverse, petitioner appears to argue that the facts regarding his request for and denial of an investigative employee is not a separate claim but rather serves to demonstrate that the SHO was not impartial.  (Traverse at 2.)

In his briefing before the superior court, petitioner argues:

petitioner did not request an investigative employee for him self, he felt he had ample evidence demonstrating his innocence.   His assertion is, if the SHO did not want to call [] the witness back in

17

> the office, as he obviously did not want to do, because there was
> evidence of innocence, under the correct due process of law he
> should [have] put the disciplinary hearing on hold and appointed an
> investiga[t]ive employee who could [have] confirmed or negated
> petitioner's contentions.

(Doc. no. 1 at 26.)

This argument can be construed as an attempt to show the officer was not impartial.  Therefore, the court will consider this information only in regard to petitioner's claim of lack of impartiality, because to consider it as a separate claim of due process violation is not possible since it is barred by the procedural default doctrine.  See Superior Court Order on Petition for Writ of Habeas Corpus (doc. no. 1 at 22:23-25) (finding that appointment of investigative employee claim was unexhausted).  "A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Beard v. Kindler, 558 U.S. 53, 55, 130 S. Ct. 612, 614 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546 (1991)).  The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits.  See Wainwright v. Sykes, 433 U.S. 72, 81-82, 90, 97 S. Ct. 2497 (1977).

Petitioner further asserts that he had ample evidence clearly demonstrating his innocence, and he would have been found innocent if the SHO had been impartial.  (Id.)

Petitioner's declaration submitted to the superior court states:

> On 5/14/10 when I signed for my copy of the Rules Violation
> Report (RVR) the C/O asked me if I wanted any witnesses, and I
> told him that I did but I was not sure exactly who would be
> testifying in my behalf.  He told me 'don't worry about it, just tell
> who ever holds the hearing, and they will call who ever you want
> in.'  It was not until the next day when I was discussing what
> happened with Inmate Miller, and I asked him if he would sign a
> declaration stating exactly what happened, and he told me he []
> would sign it and possibly testify.

(Doc. no. 1 at 27.)

/////

18

Petitioner contends that the SHO's refusal to call inmate Miller into the hearing as a witness, failure to consider Miller's declaration, failure to appoint an investigative employee, and commentary in response to reviewing Miller's declaration, as cited *supra*, all reflect his lack of impartiality.

Due process in prison disciplinary hearings requires an impartial decision maker who does not suppress evidence of innocence. Wolff, 418 U.S. at 570-71; Hill, 472 U.S. at 454. The Superior Court found that petitioner "provid[ed] no evidence that the senior hearing officer was biased." Exhibit 9 at electronic page 56.

Judicial bias is a fact based question which would be reviewed under section 2254(e)(1). Hurles, 706 F3d at 1039. Petitioner must show that the determination of the Superior Court was "unreasonable," by "clear and convincing" evidence. Because the Superior Court found no evidence of bias whatsoever, the question becomes whether such a factual determination was "unreasonable." To answer that question here, one must define, what constitutes bias.

Certainly, petitioner presented no evidence that this particular SHO harbored some animus that was personal to petitioner. Nor did petitioner demonstrate in any fashion that the SHO had some personal interest in the outcome of this hearing. Rather, petitioner points to statements/determinations made by the SHO within the context of the hearing to show this alleged bias. However, statements of position by a hearing officer, angry or cavalier as they may be, are not actionable as bias excluding evidence of hearing officer conduct so outrageous that an inference of personal animus may be raised. See United States v. McTiernan, 695 F.3d 882, 891-892 (9th Cir. 2012); Galvan v. Ayers, 292 Fed. Appx. 643, 2008 WL 4185991 (9th Cir. 2008).

The aforementioned evidence is insufficient to find that the SHO was biased in petitioner's disciplinary hearing. Being dismissive of evidence, even if incorrectly so, is one thing, judicial bias is another. The Superior Court was not unreasonable in finding "no evidence" of bias and petitioner has not produced clear and convincing evidence to the contrary.

CONCLUSION

For the reasons set forth above, petitioner has satisfied the requirements for an evidentiary hearing on the issue of whether his due process rights were violated by any refusal to permit witnesses at his disciplinary hearing, in keeping with the holding of the Supreme Court in Pinholster.  He has demonstrated that the state court's denial of habeas relief and its determination of the facts in regard to petitioner's request for a witness at his disciplinary hearing was unreasonable based on the evidence presented, and he has done so on the basis of the record that was before the state court.

IT IS HEREBY ORDERED that:

1.  An evidentiary hearing is set for January 23,  2014 at 9:00  a.m. in Courtroom 9; the court will issue the appropriate writs for the appearance of petitioner and Inmate Miller;

2.  The evidentiary hearing will be limited to: the receipt of testimony and/or evidence relevant to the issue of petitioner's claim of due process violation of his right to call witnesses at his disciplinary hearing, including the materiality of such testimony.

3.  Petitioner's motion to file a supplemental petition, filed July 3, 2013, (Doc. no. 33), is denied.

IT IS HEREBY RECOMMENDED that Petitioner's bias claim and investigative employee claim be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are

/////

/////

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: August 29, 2013

4                                /s/ Gregory G. Hollows
                         UNITED STATES MAGISTRATE JUDGE

5

6

7

   GGH:076/dunn2731.fr-hc.wpd
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26